UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

M.R. and D.R.
*His natural parents, on behalf of G.R., a minor,*

                    Plaintiffs,

    -against-                                      1:22-CV-756 (LEK/CFH)

JOSPEH RISPOLE, *et al.*,

                    Defendants.

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On July 19, 2022, M.R. and D.R. (collectively, "Plaintiffs") commenced this civil rights action on behalf of G.R., a minor. Dkt. No. 1 ("Complaint"). Plaintiffs assert a single claim under 42 U.S.C. § 1983, alleging a Fourteenth Amendment equal protection violation against Joseph Rispole ("Coach Rispole"), Matthew Stein ("AD Stein"), and Joseph Corr ("Superintendent Corr") (collectively, "Defendants"). Defendants now move for summary judgment, Dkt. No. 17-1 ("Motion"), and have provided a statement of material facts, Dkt. No. 17-2 ("Statement of Material Facts" or "SMF"). Plaintiffs have filed a response, Dkt. No. 20 ("Response"), and a response to the Statement of Material Facts, Dkt. No. 20-7 ("Response to Statement of Material Facts" or "RSMF"). Defendants have filed a reply, Dkt. No. 21 ("Reply"), and Plaintiffs have filed a sur-reply, Dkt. No. 24 ("Sur-Reply").

For the reasons that follow, Defendants' Motion is granted in part and denied in part.

## II.   BACKGROUND

The factual background of this case is taken from the allegations in the Complaint, and the facts asserted in the Statement of Material Facts and Response to Statement of Material Facts. Disputes in factual record are noted below.

M.R. and D.R. are the parents of G.R., a former student at North Colonie Central School District ("District"). See SMF ¶ 8; RSMF ¶ 8. According to the Complaint, "M.R. is Caucasian, D.R. is African American[,] and G.R. identifies as bi-racial and is so regardant by [D]efendants as well as his peers." Compl. ¶ 1. At the time of the events of this litigation, Superintendent Corr served as the District's Superintendent of Schools; AD Stein served as the District's Director of Health, Physical Education, and Athletics; and Coach Rispole served as a teacher and the head coach of the District's varsity baseball team. See SMF ¶¶ 14–16; RSMF ¶¶ 14–16.

### A.  Tryout Process

The District maintains a baseball program, which includes both a junior varsity and a varsity team. See SMF ¶ 3; RSMF ¶ 3. The junior varsity team is "typically comprised of students in ninth and tenth grade," while the varsity team is "typically comprised of students in the eleventh and twelfth grade." SMF ¶ 3; see also RSMF ¶ 3. G.R. participated in the District's baseball program, and was a member of the junior varsity team "[d]uring the 2020-2021 school year, when [he] was in the ninth grade." SMF ¶ 11; see also RSMF ¶ 11. The following school year, on February 6, 2022, Coach Rispole held a meeting "for all students who were interested in trying out for the varsity baseball team for the 2022 season." SMF ¶ 17; see also RSMF ¶ 17. G.R. attended the meeting and "participated in the open gyms and workouts held by the baseball program." SMF ¶¶ 18–19; see also RSMF ¶¶ 18–19.

On February 20, 2022, "Coach Rispole sent an email to all students who had expressed interest in trying out for the varsity baseball team," stating:

> Even if you were a member of the team last year, there is no guarantee you will make it this year; you have to earn your spot. If you are an underclassman who has been invited to try out for varsity, you have been invited, nothing more, nothing less. If the coaches feel you will develop more by having more playing time on a regular basis on JV, you will have a spot on JV. None of the coaches evaluate players on how they were ranked at showcase events, or by "For Profit" organizations such as PBR. We evaluate players based on what we see and how players perform in tryouts against their peers. . . .
>
> [Players will be] evaluated by the coaching staff on the following criteria . . . General: Hussle, Enthusiasm, Leadership, Coachability, Team First Attitude. Baseball specific: Baseball IQ, Base running; Hitting (contact, power, plate discipline, bunting, situational hitting); Fielding (range, technique, arm strength, accuracy); Pitching (ability to throw strikes, command of 2 or more pitches, velocity, velo differential between poches and ability for field position, approach to hitters/demeanor).

SMF ¶¶ 20–22; see also RSMF ¶¶ 20–22. Two weeks later, on March 4, 2022, Coach Rispole "sent an email to the parents of students who had expressed interest in trying out for the varsity baseball team," stating:

> Even if you were a member of the team last year, there is no guarantee you will make it this year; you have to earn your spot. If you are an underclassman who has been invited to try out for varsity, you have been invited, nothing more, nothing less. If the coaches feel you will develop more by having more playing time on a regular basis on JV, you will have a spot on JV. *I will not keep a 9th or 10th grade player on varsity if he is only going to play once or twice a week at most. The best way to develop skills is to play every day*. None of the coaches evaluate players on how they were ranked at showcase events, or by "For Profit" organizations such as PBR. We evaluate players based on what we see and how players perform in tryouts against their peers.

SMF ¶¶ 23–24 (emphasis added in SMF); see also RSMF ¶¶ 23–24.

From March 14 to March 18, 2022, the varsity baseball team held tryouts. See SMF ¶ 25; RSMF ¶ 25. "Thirty students tried out for the varsity team, including one freshman, four sophomores, sixteen juniors and nine seniors." SMF ¶ 26; see also RSMF ¶ 26. Throughout the tryout process, the "coaching staff that evaluated the players completed a document identified as 'Shaker Baseball Player Evaluation Rubric' ['Evaluation Rubric'], which ranked the players in certain disciplines on a scale of 1-3, with three being the best." SMF ¶ 31; see also RSMF ¶ 31. "The coaches determined who would be selected for the 2022 varsity baseball team based on each players' score in the [E]valuation [R]ubric, and the evaluation by the coaching staff." SMF ¶ 33; see also RSMF ¶ 33. "Two seniors and seven juniors"—each of whom were white—"who tried out for the 2022 varsity baseball team failed to demonstrate varsity-level baseball skills and were cut from the team." SMF ¶¶ 34–35; see also RSMF ¶¶ 34–35. With respect to the underclassmen who tried out for the team, two sophomores, "J.I. and E.G., and one freshman, T.C., were selected to join the 2022 varsity baseball team." SMF ¶ 37; see also RSMF ¶ 37. The other two sophomores that tried out for the team—G.R. and C.H.—were not selected to join at the start of the season. See SMF ¶ 38; RSMF ¶ 38.

Coach Rispole averred a number of reasons as to why G.R. was not selected for the team. First, although disputed by Plaintiffs, Coach Rispole "felt that it was better for G.R. to get more playing time on the junior varsity team as a sophomore so that he could improve his pitching and hitting performance, and work on his composure." SMF ¶ 39. Coach Rispole suggests that he was concerned about G.R.'s ability to see field time on the varsity team, as the "varsity baseball team already had four starting pitchers—three seniors and one junior—[and] it was unlikely that G.R. would see much playing time on the varsity team as a starting pitcher and would be used instead as a relief pitcher." SMF ¶ 40. The junior varsity team, by contrast, would allow G.R. to

"work with the junior varsity pitching coach, John Clayton, to improve his ball to strike ratio and his command of his secondary pitches," SMF ¶ 41, and "work with the junior varsity hitting coach, Chris Marsh to adjust his hitting approach, such as shortening his swing, staying up the middle and developing a two-strike approach," SMF ¶ 42.

Second, Coach Rispole expressed concerns regarding G.R.'s sportsmanship. Specifically, "Coach Rispole observed G.R. arguing balls and strikes, meaning when a pitch G.R. threw was called a ball, G.R. verbally expressed his belief that it was a strike." SMF ¶ 44; <u>see also</u> RSMF ¶ 44. Additionally, "Coach Rispole observed G.R. call out 'foul ball' when a ball was hit in the air before the ball was, in fact, called a foul ball." SMF ¶ 45; <u>see also</u> RSMF ¶ 45. Coach Rispole specifically told G.R. during tryouts "to stop arguing balls and strikes and to focus on his pitches." SMF ¶ 46; <u>see also</u> RSMF ¶ 46.

Third, Coach Rispole's Evaluation Rubric for G.R. includes notes related to performance. Those notes state:

> Too amped up vs. tier 1 hitters
>
> Can be a starter but needs to work on command and not overthrowing
>
> Gets frustrated easily
>
> Send to JV + work w/ Clayton on issues—call up to V—3 weeks for meat of schedule. . . .
>
> Command of Fastball was better in 4th inning but still didn't have secondary pitch control.
>
> Got flustered "That was a strike" "That was a foul ball"
>
> Stay composed.

SMF ¶¶ 47–48; <u>see also</u> RSMF ¶¶ 47–48.

With respect to his perception of the tryout process, G.R. stated the following in his deposition testimony: (1) that there was nothing "unique or different about the tryouts for [G.R.] as opposed to the other players"; (2) that there was not "anything the coaches did during the tryouts that made [G.R.] think they were treating [G.R.] differently because of [his] race"; and (3) that the coaches did not "do anything that led [G.R.] to believe" that the coaches looked at G.R. and his "performance differently because [he is] African American." SMF ¶¶ 82–83; see also RSMF ¶¶ 82–83.

**B. Evaluation Rubrics**

While reviewing the tryout participants, the coaching staff filled out Evaluation Rubrics for each respective student. See SMF ¶ 85; RSMF ¶ 85. The Evaluation Rubrics include a scaled score out of one hundred, which is derived from the points earned by a student divided by the total possible points. See SMF ¶ 87; RSMF ¶ 87. G.R. received a scaled score of 75/100. See SMF ¶ 88; RSMF ¶ 88.

Defendants aver that only two students made the varsity baseball team who scored the same as or lower than G.R.: T.S. and A.R. See SMF ¶¶ 87, 89. Plaintiffs, by contrast, argue that *three* students made the team who scored the same as or lower than G.R., and that Defendants miscalculated the score for student J.I. See RSMF ¶¶ 87, 89. Specifically, Plaintiffs point to one of Defendants' exhibits, Dkt. No. 17-20 ("Evaluation Scores"), which is a summary of the scores of each tryout participant. See RSMF ¶ 87. The Evaluation Scores shows that J.I. earned eight points out of eleven, for a scaled score of 72.7/100 (i.e., lower than G.R.'s 75/100). See Evaluation Scores at 2. Yet, in a reply affidavit, Coach Rispole states that this score "is a typo." Dkt. No. 21-2 ("Reply Affidavit") ¶ 6. According to the Evaluation Scores, J.I. could have only earned a total of nine points, not eleven; thus, J.I. seems to have actually earned eight points out

of nine, for a scaled score of 88.9/100. See Evaluation Scores at 2. It therefore appears that only

two students made the team with the same or lower scores than G.R.: T.S. and A.R.—both of

whom are white. See Resp. at 9.[1]

Defendants aver several reasons as to why T.S. and A.R. made the team. According to

Defendants, T.S.—who received the same score as G.R.—was an upperclassman and "that

juniors like T.S. were not typically asked to play on the junior varsity team."[2] SMF ¶ 94.

Regarding A.R.—who scored lower than G.R.—both sides agree that this student had played on

the varsity team the year before and "was a senior who would not have been able to play baseball

for the District if he had not been selected for the varsity team." SMF ¶¶ 90–91; RSMF ¶¶ 90–

91.

Three underclassmen were selected to join the varsity team: freshman T.C. and

sophomores J.I. and E.M. See SMF ¶ 95; RSMF ¶ 95. Although J.I.'s score is disputed, each of

these students scored higher than sophomore G.R. See SMF ¶ 95. Furthermore, the parties agree

that "that multiple Caucasian students received scores that resulted in them being cut from the

team, including multiple upper classmen." SMF ¶ 86; see also RSMF ¶ 86. Finally, both parties

agree that one white sophomore—C.H.—scored higher than G.R. but was not placed on the

team. See SMF ¶ 96; RSMF ¶ 96.

### C.  Events Following Tryouts

On March 18, 2022, Coach Rispole told G.R. that G.R. had not been selected to begin the

season on the varsity team. See SMF ¶ 49. According to Defendants, Coach Rispole also told

---

[1] Page numbers refer to ECF pagination.

[2] The Court notes that Defendants offer additional reasons for why T.S. was selected for the team in the Statement of Material Facts. See SMF ¶ 94. However, the Reply Affidavit makes clear that those arguments were based on a mistake and thus are not applicable. See Reply Aff. ¶ 7.

G.R. during this meeting "that if he joined the junior varsity team, played regularly and showed improvement in the areas that Coach Rispole identified for G.R., he would be asked to join the varsity team mid-season." SMF ¶ 49. Plaintiffs aver that Coach Rispole did not mention this possibility during this meeting. See RSMF ¶ 49. Regardless, "G.R. left the March 18, 2022 meeting with Coach Rispole and did not commit to joining the junior varsity team." SMF ¶ 50; see also RSMF ¶ 50.

That same day, Coach Rispole and AD Stein received an email from M.R. in which M.R. objected to G.R.'s placement on the junior varsity team. See SMF ¶ 53; RSMF ¶ 53. M.R.'s "email expressed his belief that G.R. had performed well during tryouts, and touted G.R.'s rankings and statistics by 'PBR.'" SMF ¶ 54; see also RSMF ¶ 54. PBR stands for "Prep Baseball Report," and was specifically referenced in Coach Rispole's February 20, 2022, and March 4, 2022, emails as a factor that the coaching staff would not consider. See SMF ¶ 54; RSMF ¶ 54. M.R.'s email did not, however, "mention G.R.'s race or express any concern that racial bias played a role in the 2022 varsity team tryout process." SMF ¶ 55; see also RSMF ¶ 55. The next day, M.R. sent another email that similarly "did not mention G.R.'s race or express any concern that racial bias played a role in the 2022 varsity team tryout process." SMF ¶¶ 57–58; see also RSMF ¶¶ 57–58.

Over the course of the following days, M.R. had multiple telephone conversations with Defendants. See SMF ¶¶ 59–64; RSMF ¶¶ 59–64. On March 29, 2022, M.R. contacted Superintendent Corr via email "in which M.R. identified two underclassmen, J.I. and T.C., who M.R. objected to being selected to join the varsity baseball team in 2022." SMF ¶ 66; see also RSMF ¶ 66. M.R. "did not expressly state that the two referenced underclassmen were Caucasian" in the email. RSMF ¶ 67; see also SMF ¶ 67 ("M.R.'s March 29, 2022 email did not

reference the race of the two underclassmen."). Plaintiffs aver, however, that the fact J.I. and T.C. were white was "common knowledge," and that M.R. had sent an email to AD Stein on March 22, 2022, in which M.R. "reference[d] the fact that G.R. was the 'only African American player being considered for Varsity.'" RSMF ¶ 67.

Ultimately, G.R. did not play on either the varsity or junior varsity baseball teams that year. See SMF ¶ 71; RSMF ¶ 71. During his deposition, G.R. stated that part of the reason why he decided not to join the junior varsity team was because he and his parents were planning on transferring to the nearby LaSalle Institute the following school year. See SMF ¶ 72; RSMF ¶ 72.

Throughout the course of the events of G.R.'s tryout process and follow-up conversations with M.R., both sides agree that the following occurred: (1) "Defendants did not make any use of racial slurs or epithets in relation to G.R."; (2) "Defendants did not engage in any overtly discriminatory conduct in relation to G.R."; (3) "No one affiliated with the District's baseball program mentioned or discussed G.R.'s race"; (4) "M.R. did not hear any employee of the District, including the Defendants, mention or reference G.R.'s race"; and (5) "G.R. never heard any coach affiliated with the District's baseball program directly or indirectly discuss any student's race." SMF ¶¶ 76–80; see also RSMF ¶¶ 76–80. In his deposition testimony, G.R. stated that he was "treated unfairly in general because maybe because of the color of my skin or they thought I was cocky." SMF ¶ 100; see also RSMF ¶ 100. When asked to elaborate on a specific reason as to why race played a part in the tryout process, G.R. responded: "Because I was in the top for every single measurable outfield throws, pitching, I had 7 strikeouts out of 15 batters. There was just no reason why I shouldn't make the team." SMF ¶ 100; see also RSMF ¶ 100.

In response to the tension created by the tryout process and concerns raised by M.R., Superintendent Corr conducted a review of Coach Rispole's decision. See SMF ¶ 134; RSMF ¶ 134. Both sides agree that "Superintendent Corr's involvement in the matters at issue in this lawsuit was limited to reviewing the decision of Coach Rispole." SMF ¶ 134; see also RSMF ¶ 134. This review included "requesting documents and information from Coach Rispole about the performance of G.R. and the other players, speaking with AD Stein, speaking with M.R. on multiple occasions, and speaking with a neighboring school district's superintendent who had substantial knowledge and prior experience with high school-level baseball." SMF ¶ 135; see also RSMF ¶ 135. Superintendent Corr ultimately "concluded that there was no reason to reverse Coach Rispole's decision and place G.R. on the varsity team." SMF ¶ 136; see also RSMF ¶ 136.

Plaintiffs now bring a claim pursuant to Section 1983, alleging that Defendants violated G.R.'s rights under the equal protection clause of the Fourteenth Amendment. See Compl. ¶ 43. Plaintiffs specifically argue that G.R. was excluded "from the varsity baseball team on account of his race." Id.

## III.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id.; see also Taggart v. Time Inc., 924 F.2d

43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "mere conclusory allegations, speculation or conjecture," Fischer v. Forrest, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" supporting its claims, Anderson, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S 133, 150 (2000), and "eschew credibility assessments," Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

IV.    **DISCUSSION**

**A.  Defects in Plaintiffs' Response**

As an initial matter, Defendants contend that Plaintiffs' Response and Response to Statement of Material Facts introduce certain facts and information that are procedurally flawed and should not be considered by the Court. See Reply at 4–6.

First, Defendants state that Plaintiffs have used their Response to Statement of Material Facts "to add voluminous statements to their admissions that do not actually challenge the factual substance of the Defendants' statements, but rather represent an effort by Plaintiffs to spin the perceived impact of her [sic] admissions." Id. at 4 (citation and internal quotation marks omitted). Essentially, Defendants argue that Plaintiffs admitted to certain facts in the Response to Statement of Material Facts, and then proceed to provide additional factual clarification of the admission, violating this District's Local Rules. See id. Defendants also state that Plaintiffs included legal arguments in their Response to Statement of Material Facts, which is also in violation of the Local Rules. See id.

Defendants are correct in their assertion. Local Rule 56.1(b) does not permit a response to a statement of material facts to provide factual clarification for an admission; rather, the rule only permits factual clarification for *denials*. As courts in this District have made clear, when a fact is admitted, any additional factual clarification will be disregarded. See Maioriello v. New York State Off. for People With Developmental Disabilities, 272 F. Supp. 3d 307, 311 (N.D.N.Y. 2017) ("[T]hroughout Plaintiff's Rule 7.1 Response, she 'admits' many of the facts asserted by Defendants in their Rule 7.1 Statement but then includes additional facts and/or legal argument in those responses. Where this occurs, the Court will deem those facts admitted and disregard the additional factual assertions and/or argument that Plaintiff provides in her responses.") (internal

citations omitted). Additionally, Local Rule 56.1(b) does not permit a litigant to include legal arguments in a response to a statement of material facts. The Court will therefore not consider any additional facts in admissions or legal arguments presented in the Response to Statement of Material Facts ¶¶ 39, 40, 41, 42, 43, 75, 92, 108.[3]

Second, Defendants state that Plaintiffs' Response impermissibly cites to Defendants' deposition transcripts. See Reply at 5. According to Defendants, this runs afoul of Federal Rule of Civil Procedure 30(e)(1) as "Plaintiffs did not give Defendants the opportunity to review their deposition transcripts prior to opposing Defendants' Rule 56 motion." Id. Yet Rule 30(e)(1) does not state that an opposing party is prohibited from introducing unreviewed deposition testimony in a summary judgment motion. And as Plaintiffs correctly point out, see Sur-Reply at 2, courts in this Circuit have permitted a party to rely on a party opponent's unreviewed deposition transcript in a summary judgment motion. See, e.g., Tycoons Worldwide Grp. (Thailand) Pub. Co. v. JBL Supply Inc., 721 F. Supp. 2d 194, 200 (S.D.N.Y. 2010) ("[I]t is not clear that plaintiff violated Rule 30(e)(1) by failing to provide [defendant] a copy with the deposition transcript before submitting excerpts from that transcript to the Court with its summary judgment motion. Rule 30(e)(1) by its terms does not state that the deponent must be given an opportunity to review and correct the transcript *before* a party submits that transcript to the Court in support of a summary judgment motion."). The Court therefore finds it appropriate to review the transcripts of Defendants' depositions.

Third, Defendants state that Plaintiffs impermissibly "provided the Court with what appears to be a schedule for the 2022 varsity baseball team that they did not produce during

[3] Defendants also object to the responses contained in RSMF ¶¶ 4, 67, 94 96, 122, and 136. See Reply at 4. The Court has reviewed these responses and has determined that they do not violate L.R. 56.1(b) or this District's case law.

discovery," in violation of Federal Rule of Civil Procedure 37(c)(1). Yet Rule 37(c)(1) states that an unproduced document can be used in a motion if the failure to produce "was substantially justified or is harmless." "Harmlessness means an absence of prejudice to the defendant." Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 159 (S.D.N.Y. 2012) (cleaned up). Here, the failure to disclose was harmless, as this schedule is a document that could have easily been obtained by Defendants given that document was presumably created by Defendants. In fact, Plaintiffs note that this schedule was obtained through the District's own public website. See Sur-Reply at 3; see also Dkt. No. 20-1 at 1 n. 1 (stating that Plaintiffs' counsel "accessed this information through the 'athletics' page of North Colonie Central School District's public website, which is available at https://www.northcolonie.org/athletics/."). The Court will therefore consider this document.

### B. Claim Against Coach Rispole

#### i. Legal Standard for an Equal Protection Claim

The Fourteenth Amendment states that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). This Circuit has established a two-part test for an equal protection claim: "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (citation omitted).

"To state a discrimination claim under the Fourteenth Amendment Equal Protection Clause and/or § 1981, plaintiffs must sufficiently allege that defendants acted with discriminatory intent." Burgis v. N.Y.C. Dep't of Sanitation, 798 F.3d 63, 68 (2d Cir. 2015) (citing Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982)). The Second Circuit has warned that "an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006) (citations omitted). However, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." Id. (citations omitted). A plaintiff can "raise an inference of discrimination by demonstrating the disparate treatment of at least one similarly situated [individual] outside his protected group and sufficient facts from which it may reasonably be inferred that 'the plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance.'" Sutter v. Dibello, No. 18-CV-817, 2021 WL 930459, at *21 (E.D.N.Y. Mar. 10, 2021) (quoting Hu v. City of New York, 927 F.3d 81, 96–97 (2d Cir. 2019)) (collecting cases).

    *ii.    Analysis of Coach Rispole's Conduct*

    Plaintiffs do not argue they have direct evidence of discriminatory conduct by Coach Rispole; instead, Plaintiffs argue that intentional discrimination can be inferred "from the fact that G.R., who was the only African American/Bi-Racial student to complete tryouts for the varsity team, objectively performed as well as or better than at least three other Caucasian students who were selected." Resp. at 14. Plaintiffs' and Defendants' arguments regarding Coach Rispole thus largely focus on one primary issue: whether Plaintiffs' have sufficiently shown that

comparable students outside of G.R.'s protected group were treated differently from G.R. by Coach Rispole. See Mot. at 15–26; Resp. 14–20; Reply at 6–13.

Plaintiffs argue that three white students, each of whom were selected to join the team, are appropriate comparators for the purpose of an equal protection claim: J.I., A.R., T.S. See Resp. at 14–19. Plaintiffs state that these three students each scored the same as or lower than G.R., but still made the team. See id. Plaintiffs go on to argue that "if [Coach] Rispole's goal was to field a team comprised of the best players, and he concedes that not all of the players he selected were better than G.R., as evidenced by the fact that he selected at least three White players who achieved the same or worse objective scores as G.R., then G.R.'s race factored into his decision making." Id. at 14–15. Plaintiffs then provide a lengthy factual analysis to explain why J.I., A.R., and T.S. are each appropriate comparators. See id. at 14–17. Plaintiffs also address C.H.: a white student who scored higher than G.R., but was not selected for the team. Plaintiffs argue that "a reasonable jury could question whether, in fact, C.H. scored as high as [D]efendants contend." Id. at 17. Plaintiffs then provide a factual analysis to explain why C.H. performed worse at tryouts than G.R. See id. at 17–19. In response to each of these arguments, Defendants provide their own factual analysis to show why J.I, A.R., and T.S. are not appropriate comparators, and why C.H.'s non-placement on the team is evidence of a lack of discriminatory intent. See Mot. at 18–20; Reply at 7–12.

The Court notes at the outset that, as discussed in supra Part II.B, J.I. did in fact score higher on the Evaluation Rubric than G.R. The Court will therefore not treat J.I. as a comparator for the purposes of this analysis.

In reviewing each party's arguments, it is clear that both sides have provided sufficient evidence to suggest that A.R. and T.S. are or are not apt comparators. Plaintiffs point out that

both of these students were similarly situated to G.R. in that they both participated in the same tryout process—a process in which Coach Rispole himself stated that each participant would "have to earn [their] spot," even those who "were a member of the team last year." Resp. at 16–17; see also SMF ¶ 21. However, Defendants note that A.R., unlike G.R., was a senior who had played on the team the year before, and who also tried-out for a different position on the team than G.R. See Reply at 8–9. Defendants further note that T.S. was a junior, that juniors with "the requisite level of skill" were "typically selected to join" the varsity team, and that G.R. was only a sophomore. Id. at 9.

Both parties have also sufficiently argued as to why C.H.'s placement on the junior varsity team is or is not strong evidence of non-discrimination. Plaintiffs argue that while C.H. scored higher than G.R., this student was nevertheless a weaker player due to a number of statistics in which he performed worse than G.R. (e.g., ball:strike ratio, total pitches as strikes, and total strikeouts). See Resp. at 17–18. Plaintiffs argue that on the basis of this evidence, C.H. cannot be seen as evidence of non-discrimination given this player's deficiencies when compared to G.R. See id. Defendants respond by arguing that the Evaluation Rubric considered a wide range of factors, and that Plaintiffs' selected statistics "in no manner support Plaintiffs' argument that C.H. 'performed worse' than G.R." Reply at 10–11.

Given that both sides have provided sufficient evidence from which a jury could find in their favor, the Court cannot find that there is no genuine factual dispute as to whether A.R. and T.S. are appropriate comparators, or whether C.H. provides strong evidence of non-discrimination. And as courts in this Circuit have routinely found, determinations of whether individuals "are similarly situated is a factual issue that should be submitted to the jury." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 n. 2 (2d Cir. 2001) (citing, inter alia, Graham

17

v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)). The Court therefore declines to grant summary judgment as to Coach Rispole.

### C. Claims Against AD Stein and Superintendent Corr

Defendants next argue that the equal protection claims against AD Stein and Superintendent Corr must be dismissed because Plaintiffs have not shown "sufficient personal involvement in the alleged constitutional deprivations." Mot. at 26 (citations omitted). Plaintiffs counter by arguing that each respective defendant had personal involvement. Regarding AD Stein, Plaintiffs state that he "received M.R.'s emails alleging racial discrimination and met with [Coach] Rispole and [Superintendent] Corr, at which time which he reviewed [the Evaluation Scores], which shows that G.R. performed as well as or better than three White players who were selected for the team." Resp. at 20. Despite this, Plaintiffs argue, AD Stein "never referred M.R.'s allegations to [another District employee] to investigate" and "simply capitulated to Rispole's decision." Id. With respect to Superintendent Corr, Plaintiffs state that he reviewed the Evaluation Scores and thus "would have learned that G.R. performed objectively better than three White students who performed as well as or worse than [G.R.]." Id. Yet, according to Plaintiffs, Superintendent Corr failed "to take remedial action in light of the known circumstances." Id.

"To sustain a § 1983 claim, the plaintiff must show that there was sufficient personal involvement in the alleged constitutional deprivations on the part of the defendants." Zdziebloski v. Town of E. Greenbush, N.Y., 336 F. Supp. 2d 194, 201–02 (N.D.N.Y. 2004) (Kahn, J.) (citing Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991)). "A party may be personally involved for purposes of section 1983 in several ways. First, of course, a party may have directly participated in the alleged constitutional deprivation. Absent such direct involvement,

supervisory personnel will be considered personally involved if they failed to remedy a wrong

after learning of the violation." <u>Schallop v. New York State Dep't of L.</u>, 20 F. Supp. 2d 384, 392

(N.D.N.Y. 1998). However, "mere inaction in resolving plaintiff's complaint does not meet the

requisite level of personal involvement for § 1983 liability to attach." <u>Peck v. Cnty. of</u>

<u>Onondaga, New York</u>, No. 21-CV-651, 2021 WL 3710546, at *12 (N.D.N.Y. Aug. 20, 2021)

(citing <u>Tangreti v. Bachmann</u>, 983 F.3d 609, 618 (2d Cir. 2020)).

   Here, Plaintiffs have not established a sufficient personal connection to plead a Section

1983 claim against either AD Stein or Superintendent Corr. Plaintiffs' claim is largely predicated

on the argument that AD Stein and Superintendent Corr did not overturn the decisions of Coach

Rispole after hearing M.R.'s complaints and reviewing the Evaluation Scores. Plaintiffs

essentially allege a claim that mirrors the claim made by the plaintiff in <u>Peck</u>, 2021 WL

3710546. In that case, the plaintiff made allegations against two relevant defendants: Cassalia

and Curry-Clarry. The <u>Peck</u> plaintiff alleged that Cassalia (1) failed to "remedy[] the

discriminatory practices [the plaintiff] pointed out at the June 18, 2020 open forum," and (2)

dismissed plaintiff's complaints regarding certain alleged discriminatory conduct. <u>Id.</u> at *11. The

<u>Peck</u> plaintiff alleged that Curry-Clarry (1) conducted "an insufficient and inaccurate

investigation into plaintiff's claim" of discriminatory conduct, and (2) undertook "a general

failure to ameliorate the discriminatory atmosphere of which plaintiff complained." <u>Id.</u> at *12.

These complaints are very similar to the allegations brought by Plaintiffs, as Plaintiffs here

allege that AD Stein and Superintendent Corr failed to conduct a proper investigation and

overturn the decision of Coach Rispole. The <u>Peck</u> court ultimately found that the plaintiff's

allegations were not enough to establish personal involvement under Section 1983, as the

plaintiff's "allegations amount only to inaction." <u>Id.</u> at *11. Similarly here, Plaintiffs' allege only inaction, which is not sufficient to meet Section 1983's personal involvement requirement.

Even if AD Stein and Superintendent Corr had the requisite personal involvement under Section 1983, Plaintiffs' claim against these defendants would still fail. Plaintiffs plead a claim of equal protection. <u>see</u> Compl. ¶ 43, and must therefore show that AD Stein and Superintendent Corr "acted with discriminatory intent," <u>Burgis</u>, 798 F.3d at 68. Yet nowhere do Plaintiffs provide evidence in their Complaint or Response that either of these defendants engaged in discriminatory intent. Plaintiffs' lengthy allegations regarding the intentional discriminatory actions taken during the tryout process pertain specifically to Coach Rispole. Plaintiffs do not allege, however, that failure to take remedial actions in the wake Coach Rispole's actions were the product of discriminatory intent. <u>See</u> Resp. at 20–21. By failing to allege any fact that shows discriminatory intent on the part of AD Stein or Superintendent Corr, Plaintiffs cannot sustain an equal protection claim against these defendants. The Court therefore grants summary judgment on this issue.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion, Dkt. No. 17, **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that the equal protection claims against Matthew Stein and Joseph Corr are **DISMISSED**; and it is further

**ORDERED**, that Matthew Stein and Joseph Corr are **DISMISSED** as defendants in this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all

parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      April 17, 2024
            Albany, New York

LAWRENCE E. KAHN
United States District Judge