UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

M.R. and D.R.
*His natural parents, on behalf of G.R., a minor*,

                                            Plaintiffs,

-against-                                                      1:22-CV-756 (LEK/CFH)

JOSEPH RISPOLE,

                                            Defendant.

## MEMORANDUM-DECISION AND ORDER

**I. INTRODUCTION**

On September 18, 2023, Defendants Joseph Rispole, Matthew Stein, and Joseph Corr filed a motion for summary judgment, seeking the dismissal of Plaintiffs' claims against them. Dkt. No. 17-1 ("Motion for Summary Judgment"). On April 17, 2024, the Court issued a Memorandum-Decision and Order granting summary judgment on Plaintiffs' claims against Defendants Stein and Corr and denying summary judgment on Plaintiffs' claim against Defendant Rispole. Dkt. No. 26 ("April Order"). Defendant Rispole now asks the Court to reconsider its April Order. Dkt. No. 27 ("Motion"). Plaintiffs filed a response in opposition, Dkt. No. 33, and Defendant filed a reply, Dkt. No. 34.

For the reasons that follow, Defendant's Motion is granted. Upon reconsideration, the Court grants Defendants' motion for summary judgment on Plaintiffs' claim against Defendant Rispole.

**II. BACKGROUND**

The Court assumes familiarity with the factual background of this case as detailed in its April Order. *See* Apr. Ord. at 2–10.

1

### III.    LEGAL STANDARD

"A motion for reconsideration is properly granted where 'the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Schoolcraft v. City of New York*, 248 F. Supp. 3d 506, 508 (S.D.N.Y. 2017) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). The standard on a motion for reconsideration is strict, and it is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 244 (E.D.N.Y. 2014) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).

The legal standard for summary judgment was set forth in the Court's April Order and will not be restated here. *See* Apr. Ord. at 10–11.

### IV.    DISCUSSION

**A. Defendant's Motion for Reconsideration is Granted.**

Defendant first asks the Court to "reconsider the portion of its decision which denied [Defendant]'s motion for summary judgment because the Court applied the wrong standard of review to G.R.'s claim of intentional race discrimination under the Equal Protection Clause." Mot. at 3. Defendant avers that "[t]he appropriate framework in this case is not the *Diesel* test used by the Court, but rather the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [(1973)]." *Id.* at 4.

The *Diesel* test is used for equal protection claims that challenge "the selective enforcement of the law." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000). Acknowledged as a "murky corner of equal protection law in which there are surprisingly few cases," *id.* (quoting *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980)), *Diesel*'s application

is limited to where a plaintiff alleges that a defendant selectively enforced a law, rule, or regulation against them based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Id.* (quoting *LeClair*, 627 F.2d at 609–10); *see, e.g.*, *Savino v. Town of Southeast*, 983 F. Supp. 2d 293, 305–07 (S.D.N.Y. 2013) (applying *Diesel* to the plaintiffs' claim that the defendants selectively enforced the town's zoning codes against the plaintiffs because of the plaintiffs' national origin); *Musco Propane, LLP v. Town of Wolcott*, 891 F. Supp. 2d 261, 274 (D.Conn. 2012) (applying *Diesel* to the plaintiff's claim that the defendants selectively enforced the town's zoning regulations against the plaintiff because of the plaintiff's First Amendment activity); *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 224–27 (N.D.N.Y. 2012) (applying *Diesel* to the plaintiff's claim that the defendants selectively enforced the city code against newcomers to the city); *Wandering Dago Inc. v. N.Y. State Office of Gen. Servs.*, 992 F. Supp. 2d 102, 127–28 (N.D.N.Y. 2014) (applying *Diesel* to the plaintiff's claim that the defendants selectively enforced the "terms of the Food Vendor Application packet" and New York state law against the plaintiff because of the plaintiff's First Amendment activity).

Unlike the cases where courts have routinely applied the *Diesel* test, the facts in this case show no evidence of Defendant selectively enforcing a law, rule, or regulation against G.R. Indeed, Plaintiffs do not allege in their complaint that Defendant selectively enforced a rule against G.R. and "failed to take comparable action against" "similarly-situated entities." *Bernstein v. Village of Wesley Hills*, 95 F. Supp. 3d 547, 571 (S.D.N.Y. 2015). Rather, Plaintiffs allege only that "[b]y intentionally excluding [P]laintiffs' son from the varsity baseball team on account of his race . . . [D]efendant[] violated the equal protection clause of the Fourteenth Amendment." Dkt. No. 1 ¶ 43. Such claims of intentional discrimination, in the absence of any

allegations of selective enforcement, cannot be evaluated with the *Diesel* test. Therefore, the legal standard applied in the April Order is inapplicable to Plaintiff's claim.

Plaintiffs argue that this Motion should be denied because Defendant "never made this argument in support of his initial summary judgment motion." Resp. at 3 (emphasis omitted). Indeed, Defendant "expressly cited and applied *Diesel*, the very precedent he now claims is inapplicable." *Id.*; *see* Mot. for Summ. J. at 10. While a motion for reconsideration is "not a vehicle for . . . presenting the case under new theories," *Sass*, 6 F. Supp. 3d at 244, Defendant does not advocate for the Court to consider the case under a new legal theory. *See* Mot. at 3–8. Defendant asks only that the Court apply the *correct* legal standard to Plaintiffs' race discrimination claim. *Id.* Such a request may be granted in a motion for reconsideration. *See, e.g.*, *Schoolcraft v. City of New York*, 298 F.R.D. 134, 138 (S.D.N.Y. 2014) (granting the defendant's motion for reconsideration because the court's initial reliance on two circuit court opinions was "misplaced," and a different circuit court opinion was "more applicable in this instance").

The *McDonnell Douglas* framework is the correct standard for evaluating G.R.'s claim of intentional race discrimination under the Equal Protection Clause. In *Gant ex rel. Gant v. Wallingford Board of Education*, the Second Circuit held that "the burden-shifting framework of Title VII claims" is "fully applicable to constitutional claims where the issue is whether an improper motive existed." 195 F.3d 134, 146 (2d Cir. 1999) (quoting *Howard v. Senkowski*, 986 F.2d 24, 27 n. 2 (2d Cir. 1993)). In *Gant*, the parents of an elementary school student brought suit on behalf of their child, alleging intentional race discrimination after the school transferred the child from a first-grade class to a kindergarten class. *Id.* at 138. In assessing the merits of the plaintiffs' claim, the court "borrow[ed] the [*McDonnell Douglas*] burden-shifting framework of

4

Title VII claims." *Id.* at 146; *see also Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 209–10 (E.D.N.Y. 2014) (noting that the *McDonnell Douglas* framework is used to assess Section 1983 equal protection claims alleging race discrimination on a disparate treatment theory). Accordingly, the Court will reconsider Plaintiffs' equal protection claim for race discrimination under the *McDonnell Douglas* framework.

The Court finds that Defendant has met his burden of pointing to "controlling decisions . . . that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." *Schoolcraft*, 248 F. Supp. 3d at 508 (quoting *Shrader*, 70 F.3d at 257). Indeed, the Court applied the wrong legal rule for Plaintiffs' race discrimination claim. Defendant's motion for reconsideration is granted.

## B. Defendant's Motion for Summary Judgment on Plaintiffs' Equal Protection Claim Against Defendant Rispole is Granted.

Upon reconsideration, the Court grants Defendant's motion for summary judgment on Plaintiffs' claim against Defendant Rispole.

"Under the [*McDonnell Douglas*] framework, a plaintiff must first establish a *prima facie* case of discrimination . . . . If the plaintiff satisfies this initial burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions . . . . If the [defendant] is able to satisfy that burden, the inquiry then returns to the plaintiff, to demonstrate that the proffered reason is a pretext for discrimination." *Bowen-Hooks*, 13 F. Supp. 3d at 210. (internal citations omitted).

### 1. Plaintiffs' Prima Facie Case

Plaintiffs establish a *prima facie* case of race discrimination. A student can make a claim for race discrimination against their school by showing that (1) he was a member of a protected group; (2) he was qualified for the school's extra-curricular activity; (3) he suffered an adverse

action; and (4) the adverse action gives rise to an inference of race discrimination. *See Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (setting out the *prima facie* case for discrimination in the Title VII context); *Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 921 (7th Cir. 2007) (adjusting the *prima facie* case for race discrimination to the "educational context").

With respect to the fourth prong of this test, "the evidence necessary to satisfy this initial burden [is] 'minimal' and '*de minimis*.'" *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001). "[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage." *Id.*

In this case, G.R. is bi-racial, and therefore a member of a protected group. Dkt. No. 17-2 ("Statement of Material Facts" or "SMF") ¶ 98; Dkt. No. 20-7 ("Response to Statement of Material Facts" or "RSMF") ¶ 99. As a sophomore in the North Colonie Central School District, G.R. was qualified to join the varsity baseball team. SMF ¶¶ 37–38; RSMF ¶ 37–38. He suffered an adverse action: he was not selected to join the team. SMF ¶ 38; RSMF ¶ 38. And the adverse action gives rise to an inference of race discrimination, considering that two Caucasian students, A.R. and T.S., scored equal to, or lower, than G.R. on the Evaluation Rubric at tryouts, but nevertheless made the team over G.R. SMF ¶ 88; RSMF ¶ 89. Accordingly, Plaintiffs have established a *prima facie* case for race discrimination.

2. *Defendant's Legitimate, Nondiscriminatory Reasons*

Defendant articulates legitimate, nondiscriminatory reasons for his actions. "The Second Circuit has held that '[a]ny such stated purpose is sufficient to satisfy the defendant's burden of production; the [defendant] does not have to persuade the court that the stated purpose was the

actual reason for its decision." *Guarino v. St. John Fisher Coll.*, 553 F. Supp. 2d 252, 260 (W.D.N.Y. 2008) (quoting *Austin v. Ford Models, Inc.*, 149 F.3d 148, 153 (2d Cir. 1998)).

Defendant offered a number of reasons as to why G.R. was not selected for the varsity team. For one, Defendant stated that he "felt that it was better for [G.R.] to get more playing time on the junior varsity team as a sophomore so he could improve his pitching and hitting performance." Dkt. No. 17-13 ("Rispole Affidavit") ¶ 6. In Defendant's Evaluation Rubric for G.R., he noted that G.R. "needs to work on command and not overthrowing," and "still didn't have secondary pitch control." Dkt. No. 17-16 at 10.

Defendant also expressed concerns about G.R.'s composure, stating that G.R. was "[t]oo amped up," "gets frustrated easily," and "got flustered." *Id.* Defendant explained that "during tryouts, [he] observed G.R. arguing balls and strikes, meaning when a pitch G.R. threw was called a ball, G.R. verbally expressed his belief that it was a strike. G.R. also called out 'foul ball' when a ball was hit in the air before the ball was, in fact, called a foul ball." Rispole Aff. ¶ 18.

The Court finds that Defendant has satisfied his burden of production in stating legitimate, nondiscriminatory reasons for not selecting G.R. for the varsity team.

### 3. Pretext for Discrimination

Moving to the third, and final, step of the *McDonnell Douglas* framework, the Court finds that Plaintiffs fail to establish that Defendant's legitimate, nondiscriminatory reasons were pretext for race discrimination. Compared to a plaintiff alleging discrimination under Title VII, "a plaintiff asserting a [Section] 1983 claim bears a higher burden in establishing that the [defendant]'s alternative, nondiscriminatory reason for the adverse [] action is 'pretextual.'" *Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019). Indeed, Section 1983 requires a showing of "but-for" causation. *Id.* "[T]o establish 'pretext' under [Section] 1983, a plaintiff must

7

establish that the [defendant]'s stated reason would not, alone, constitute a *sufficient* basis for pursuing an adverse action." *Id.* at 215. Put differently, "a [Section] 1983 plaintiff must establish that the [defendant]'s stated non-discriminatory reason is either false or inadequate to support the adverse [] action." *Id.* Plaintiffs cannot meet this heightened burden.

Defendant and Plaintiffs agree that the coaches determined who would be selected for the varsity team based on each student's score on the Evaluation Rubric and evaluation by the coaching staff. SMF ¶ 33; RSMF ¶ 33. The assessment was not purely quantitative, and it was not based purely on a student's athletic performance. *See* Dkt. No. 17-17 (Evaluation Rubrics state that certain players "lead by ex[ample]," have a "great attitude," and could be a potential "mentor"). Legitimate, nondiscriminatory concerns about a student's composure would be an adequate basis for not selecting that student for the varsity team.

As explained *supra*, Defendant stated several concerns with G.R.'s composure that motivated his decision not to select G.R. for the varsity team. Among them were Defendant's concerns about G.R.'s sportsmanship. During G.R.'s tryout, Defendant Rispole observed G.R. argue that pitches were strikes, despite being called balls. SMF ¶ 44; RSMF ¶ 44. Defendant testified that G.R. argued over balls and strikes multiple times, and he was the only pitcher to do so. Dkt. No. 20-2 ("Rispole Transcript") at 89:17–90:13. G.R. also "called out 'foul ball' when a ball was hit in the air before the ball was, in fact, called a foul ball." SMF ¶ 44; RSMF ¶ 45. Defendant made note of this behavior on G.R.'s Evaluation Rubric. SMF ¶ 47; RSMF ¶ 48. A baseball player's sportsmanship will not appear on a numerical scoring rubric or on the back of a baseball card, but any coach would acknowledge its importance. Indeed, in his deposition, Defendant Rispole distinguished between "put[ting] the best team on the field" and "select[ing] the best players for the team." Rispole Trans. at 86:20–25. As such, the Court finds that

8

Defendant's observations about G.R.'s poor sportsmanship, none of which are refuted by Plaintiffs, are adequate to support Defendant's decision not to select G.R. for the varsity team. Plaintiffs fail to prove that Defendant's reasons for the adverse action were pretextual.

In so ruling, the Court need not consider whether G.R.'s on-field performance was good enough to make the team. Nor does the Court need to consider whether Defendant's concern about G.R. being "cocky" "demonstrates racial stereotyping." Resp. at 10. The heightened burden for establishing pretext for Section 1983 claims does not require it. Defendant articulated legitimate concerns about G.R.'s sportsmanship, beyond Defendant's insinuation that G.R. was "cocky," which no reasonable jury could construe as probative of a discriminatory motive. Such concerns constitute a sufficient basis for not selecting G.R. for the varsity team.

Because Plaintiffs fail to demonstrate that Defendant's legitimate, nondiscriminatory reasons were pretext for race discrimination, their equal protection claim against Defendant Rispole cannot survive summary judgment.

## V.  CONCLUSION

It is hereby:

**ORDERED**, that Defendant's motion for reconsideration, Dkt. No. 27, is **GRANTED**; and it is further

**ORDERED**, that Defendant's motion for summary judgment, Dkt. No. 17, is **GRANTED** in its entirety; and it is further

**ORDERED**, that the equal protection claim against Defendant Joseph Rispole is **DISMISSED**; and it is further

**ORDERED**, that Joseph Rispole is **DISMISSED** as a defendant in this action; and it is further

**ORDERED**, that the Clerk close this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   January 10, 2025
         Albany, New York

_____
LAWRENCE E. KAHN
United States District Judge